882 So.2d 428 (2004)
Rebecca L. CAMUS, Appellant,
v.
Alan C. PROKOSCH, Appellee.
No. 1D04-1620.
District Court of Appeal of Florida, First District.
August 19, 2004.
Rehearing Denied September 28, 2004.
Keith A. McIver, of Chase, Quinnell, McIver & Jackson, P.A., Pensacola, for appellant.
Michael T. Webster, Shalimar, for appellee.
*429 WOLF, C.J.
In this paternity action Rebecca L. Camus appeals an order establishing child support obligations for her child with Alan C. Prokosch (father). We find the trial court erred under the facts of this case in calculating the net income of the father, and we reverse.
The father/appellee resides with and continues to be married to Robin Prokosch, his wife of over seventeen years. The appellee drafted and entered into an agreement with his wife requiring him to make "spousal support" payments and to transfer half of his monthly military retirement income to his wife. In the proceedings below, the appellee asserted that these payments and transfers either should not be included in his gross income or, alternatively, should be deducted from his gross income for the purposes of determining the guideline support obligations to his child. The trial court found that these payments between the appellee and his wife were a "shameful artifice intended to avoid paying guideline child support." However, the trial court concluded that the "father's actions (whatever his intentions) are within statutory bounds." Thus, the trial court concluded that the father was allowed to deduct the spousal support payments from his gross income pursuant to section 61.30(3)(g), Florida Statutes (2003), as payments for support for a "previous marriage."[1] We disagree.
Chapter 742, involving paternity determination, directs the trial court to establish child support obligations pursuant to section 61.30. See § 742.031(1), Fla. Stat. (2003). The determinative factor in calculating the guidelines amount of child support is the net income of the parents. See § 61.30, Fla. Stat. (2003). Net income is calculated using both parents' recurring gross income minus certain deductions. See § 61.30(2)-(5), Fla. Stat. (2003). After calculating net income, the trial court uses the guidelines table in section 61.30(6) to determine the minimum guidelines amount of support. Once the trial court has established each parent's percentage share of the guidelines child support, this percentage is applied to the minimum guidelines amount of child support to arrive at each parent's actual dollar share of child support. See § 61.30(10), Fla. Stat. (2003).
Section 61.30(3)(g) allows a deduction for alimony:
(3) Allowable deductions from gross income shall include:
....
(g) Spousal support paid pursuant to a court order from a previous marriage or the marriage before the court.
§ 61.30, Fla. Stat. (2003). The issue before the trial court was whether it must subtract appellee's "shameful" transfers of money for "spousal support" and his military retirement from his gross income despite the finding that these payments were a fraud.
The record supports the trial court's finding that the father's support payments to his current wife were a sham to lower his child support obligation.[2] The trial court, however, erred as a matter of law in *430 interpreting section 61.30(3)(g) as applying to the father's payments to his wife. The father's chicanery cannot constitute "spousal support from a previous marriage" as contemplated by this section.
It is also well established that proceedings under chapter 61, and by reference to chapter 742, are equitable in nature and, therefore, governed by basic rules of fairness. See Sumlar v. Sumlar, 827 So.2d 1079 (Fla. 1st DCA 2002). Allowing the father to reduce his support obligations based on his duplicitous transactions does not comport with the basic rules of fairness. Because we find that the trial court erred as a matter of law in finding that these payments were deductible under section 61.30(3)(g), and no other deduction applies, the payments to appellee's wife cannot be deducted for the purposes of calculating the father's net income and support obligations. See Copeland v. Copeland, 667 So.2d 487 (Fla. 1st DCA 1996) (reversing in part, finding reduction of gross income for 10% of income which was regularly tithed to church during the marriage was inappropriate where guidelines did not include tithing as deduction and did not grant discretion to allow deduction of items not listed in section 61.30(3)).
Regarding the military retirement income, the agreement categorizes this as a transfer of property from appellee to his wife. The record does not establish that appellee only owns half of this property. Regardless, it was error for the trial court either to not include in or to deduct from the father's gross income the amount of military retirement benefits transferred to his wife. Whereas retirement income must be included in calculating gross income pursuant to section 61.30(2)(a)(7), distributions of property are not listed as an allowable deduction under section 61.30(g). Moreover, where a parent transfers property or voluntarily decreases his income to circumvent child support obligations, the amount of the decrease can be included for determining child support obligations. See Hirsch v. Hirsch, 642 So.2d 20 (Fla. 5th DCA 1994) (reversing reduction in child support obligation of father who essentially transferred portion of his military severance to his new wife). We would not allow such transfers to defraud creditors; therefore, the trial court should not have allowed these transfers to reduce the father's obligations to his child. See generally, Valdivia v. Valdivia, 593 So.2d 1190, 1192 (Fla. 3d DCA 1992) ("The law is clear that a debtor may not transfer property owned by himself, individually, to himself and his wife as tenants by the entireties, if such a transfer will defraud creditors by putting that property beyond the creditors' reach."). See also Sheets v. Sheets, 83 P.3d 901 (Okla.Ct.App.2003) (finding father could not claim deduction from his income for current wife's services to his veterinary practice for purposes of child support obligations); Stroud v. Stroud, 758 So.2d 502 (Miss.Ct.App.2000) (affirming child support award based on father's dental practice profits rather than salary where father diverted income to his current wife, the dental office manager, to decrease the net profits by 60%); Evjen v. Evjen, 171 Wis.2d 677, 492 N.W.2d 361 (Ct.App.1992) (affirming inclusion of money paid by father's closely held corporation to his current wife in father's gross income where father was attempting to dodge his child support obligations by transferring *431 corporate income to his current wife). As such, we find the father's full military retirement amount should have been included in calculating his income.
Appellee argues that even without the reduction in the net income for payments to his wife, the child's needs only warrant $500.00 worth of support, citing Finley v. Scott, 707 So.2d 1112 (Fla.1998). Neither the law, nor the facts in Finley support appellee's argument. In Finley, the supreme court was addressing the issue of whether a trial court had the right to deviate from the support guidelines. In this case there was no deviation of guidelines, but rather an error in calculating the presumptive minimum guideline amount. Factually, whereas the paternity action in Finley involved a father who was a professional athlete making $266,926 a month and a child whose living expenses were much lower than the $10,000 guideline amount, this case involves a child whose existence is teetering on the poverty level. Appellee's argument  that even without the reduction in net income the child support obligation was sufficient because the child was getting by with $500.00 a month in support  is without merit.
In conclusion, we reiterate that a parent's financial position cannot be voluntarily decreased to lessen his or her child support obligations. We find that under the circumstances in this case, the trial court erred in calculating appellee's net income by deducting the amounts transferred to his wife. We remand with directions to recalculate child support guidelines pursuant to the formula prescribed by section 61.30, consistent with this opinion.
KAHN and LEWIS, JJ., concur.
NOTES
[1] The trial court also allowed the father to deduct child support to his wife for their minor child who lives with him and his wife. Appellant does not challenge the validity of this deduction.
[2] The record reflects that on September 12, 2003, appellee entered into a contract with his wife in which he agreed to pay over half of his monthly income to her. The agreement makes no reference to a separation between appellee and his wife. This agreement between appellee and his wife was drafted by appellee's attorney, Michael T. Webster, the same attorney representing appellee in the current matter. Appellee's wife was unrepresented when she signed the agreement. On the same day appellee signed the agreement with his wife, he initiated this action by filing a "Petition to Determine Paternity and for Related Relief" against appellant. At the hearing, appellee testified that he and his wife were never separated and they continued to live in the same home. Although appellee repeatedly mentioned that he resided in a back bedroom "most of the time," there was no testimony as to where his wife resided in the home.